ROBERT A. JACOBS (CA Bar No. 160350)
E-mail: rjacobs@manatt.com
SARAH E. MOSES (CA Bar No. 291491)
E-mail: smoses@manatt.com
ANDREA D. GONZALEZ (CA Bar No. 336134)
E-mail: adgonzalez@manatt.com
Manatt, Phelps & Phillips, LLP
2049 Century Park East
Suite 1700
Los Angeles, California 90067
Telephone:  310.312.4000
Facsimile:   310.312.4224

*Attorney for Plaintiffs*
EMPAWA AFRICA MUSIC SERVICES
LIMITED and EZEANI CHIDERA
GODFREY p/k/a DERA

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| EMPAWA AFRICA MUSIC SERVICES LIMITED; AND EZEANI CHIDERA GODFREY p/k/a DERA, <br><br> Plaintiffs, <br><br> v. <br><br> BENITO ANTONIO MARTINEZ OCASIO p/k/a BAD BUNNY; ORCHARD ENTERPRISES NY, INC.; ORCHARD ENTERPRISES LLC; RIMAS ENTERTAINMENT LLC; RSM PUBLISHING LLC; ROBERTO JOSE ROSADO TORRES, JR. p/k/a LA PACIENCA; CREATIVE PARK PUBLISHING; MARCO DANIEL BORRERO p/k/a MAG; UNIVERSAL MUSIC CORP.; SONGS OF UNIVERSAL, INC.; SPOTIFY USA INC.; WARNER-TAMERLANE PUBLISHING CORP.; APPLE INC. d/b/a APPLE MUSIC; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 2:25-cv-03944 <br><br><br> **COMPLAINT FOR COPYRIGHT INFRINGEMENT** <br><br><br> **DEMAND FOR JURY TRIAL** |

1  Plaintiffs EMPAWA AFRICA MUSIC SERVICES LIMITED ("Empawa")
2  and EZEANI CHIDERA GODFREY p/k/a DERA ("Dera") (collectively,
3  "Plaintiffs"), by their attorneys, Manatt, Phelps & Phillips, LLP, allege the
4  following in support of their claims and causes of action against BENITO
5  ANTONIO MARTINEZ OCASIO p/k/a BAD BUNNY ("Bad Bunny"),
6  ORCHARD ENTERPRISES NY, INC., ORCHARD ENTERPRISES LLC
7  (collectively, with Orchard Enterprises NY, Inc., "The Orchard"), RIMAS
8  ENTERTAINMENT LLC ("Rimas"), RSM PUBLISHING LLC ("RSM"),
9  ROBERTO JOSE ROSADO TORRES, JR. p/k/a LA PACIENCA ("Torres"),
10  CREATIVE PARK PUBLISHING ("Creative Park"), MARCO DANIEL
11  BORRERO p/k/a MAG ("Borrero"), UNIVERSAL MUSIC CORP. ("UMC"),
12  SONGS OF UNIVERSAL, INC. ("SOU" and, collectively with UMC, "UMPG"),
13  SPOTIFY USA INC. ("Spotify"), WARNER-TAMERLANE PUBLISHING
14  CORP. ("W-T"), APPLE INC. d/b/a APPLE MUSIC ("Apple"), and DOES 1-10,
15  inclusive (all of the foregoing defendants, collectively, "Defendants").

16  **<u>NATURE OF THE ACTION</u>**

17  1.   It is not very often that a musical artist of Bad Bunny's caliber and
18  sophistication uses someone else's music without permission, and then ignores the
19  person's efforts to resolve the problem.  Such a response is especially surprising
20  when the unauthorized use pervades the entirety of the musical artist's work.
21  Unfortunately, these are the circumstances here.  Bad Bunny and several of the
22  other defendants turned a blind eye to the concerns that Plaintiffs repeatedly raised
23  with them about their unauthorized use and misappropriation of Plaintiffs' musical
24  works, leaving Plaintiffs with no choice but to file this lawsuit.

25  2.   Dera, a songwriter previously signed to Empawa, wrote and recorded
26  an instrumental work *Empty My Pocket (Instrumental)* (respectively, the "Original
27  Composition" and "Original Recording") in 2019.  At different points in time
28  between 2019 and early 2021, Dera and Joseph Akinwale Akinfenwa-Donus p/k/a

Joeboy, a songwriter and recording artist signed to Empawa, wrote and recorded lyrics that they added to the Original Composition and Original Recording to create a new composition (the "Second Composition") and new recording (the "Second Recording") entitled *Empty My Pocket* (all of the foregoing musical works, collectively, the "Plaintiffs' Works"). As detailed further below, Plaintiffs are the registered claimants of the copyrights in the Plaintiffs' Works.

3. On information belief, Lekan Adesina p/k/a Lakizo ("Lakizo"), a music producer and distributor in Nigeria furnished a copy of *Empty My Pocket* to Bad Bunny and/or Rimas. Lakizo, however, is not an author of *Empty My Pocket* (or any of the other Plaintiffs' Works), and does not have – and never had – the right to prepare or authorize others to prepare derivative works based on *Empty My Pocket* (or any of the other Plaintiffs' Works).

4. Without seeking or obtaining Plaintiffs' consent, Bad Bunny, Torres, and Borrero sampled and otherwise incorporated *Empty My Pocket* – and, in doing so, all of the Plaintiffs' Works – in the musical composition and sound recording *Enséñame a Bailar* (respectively, the "Infringing Composition" and "Infringing Recording") on his chart-topping album *Un Verano Sin Ti* (the "Infringing Album"). Without seeking or obtaining Plaintiffs' consent, Bad Bunny, Rimas, and The Orchard also prepared and released a music video embodying the Infringing Composition and Infringing Recording (the "Infringing Video") that, upon information and belief, has garnered more than 60 million views to date on YouTube alone. In addition, without seeking or obtaining Plaintiffs' consent, upon information and belief, Bad Bunny performed the Infringing Composition with Plaintiffs' Works playing as his backing track during his first-ever stadium tour – marketed and promoted as the "World's Hottest Tour" – in support of the Infringing Album, including in Los Angeles, California (the "2022 Tour").

5. The use of Plaintiffs' Works in the Infringing Recording, Infringing Composition, Infringing Album, and Infringing Video (collectively, the "Infringing

Works") is extensive and beyond question.  Plaintiffs' Works comprise virtually the entirety of the musical bed and a portion of the lyrics in the Infringing Recording and Infringing Composition, and, as such, account for a significant portion of the appeal of the Infringing Works.

6.     Upon learning of the use of the Plaintiffs' Works in the Infringing Works, Plaintiffs raised their concerns with representatives of Bad Bunny and the principal companies responsible for the distribution and other exploitation of the Infringing Works, including Rimas, RSM, The Orchard, and UMPG.  Plaintiffs made several overtures to these defendants seeking a resolution that would address past unauthorized uses, and allow future uses, of Plaintiffs' Works in the Infringing Works.  Plaintiffs unconditionally complied with these defendants' requests to substantiate Plaintiffs' ownership of the Plaintiffs' Works, including by giving their representatives (i) an unredacted copy of the agreement Empawa entered into with Lakizo granting him a limited right to distribute the Second Recording; and (ii) sound files and other evidence conclusively demonstrating that Lakizo did not author or co-author  any of Plaintiffs' Works.  Despite Plaintiffs' cooperation, these defendants stonewalled Plaintiffs after receiving the requested information, making clear that Plaintiffs' only option for obtaining redress for the violation of their rights would be through the courts.

## THE PARTIES

7.     Empawa is a private limited company organized under the laws of the United Kingdom, and has its principal place of business in England.  Empawa does business under its own name and under the name emPawa Africa Limited.

8.     Dera is a songwriter, producer, and recording artist who resides in Lagos, Nigeria.

9.     Bad Bunny is an individual who, upon information and belief, owns a home and resides in Los Angeles, California.  Upon information and belief, and as detailed further below, Bad Bunny has purposefully sought out and entered into

business relationships with various entities headquartered in the State of California, including, without limitation, UMC (which administers his rights in the Infringing Composition and other musical compositions) and non-parties Global Music Rights, LLC ("GMR"), United Talent Agency, LLC ("UTA"), and Live Nation Entertainment, Inc. ("Live Nation"), through which he has received at least tens of millions of dollars of income.  In addition, upon information and belief, and as further detailed below, Bad Bunny purposefully chose to make the State of California the principal focus of the U.S. leg of the 2022 Tour, playing more shows and generating far more revenues there than in any other state.  Moreover, upon information and belief, Rimas and Bad Bunny, on the one hand, and Apple, a California corporation, on the other hand, have closely collaborated with each other, including, without limitation, in connection with promoting and showcasing the Infringing Album and Bad Bunny.  Noah Assad ("Assad"), the head of Rimas and Bad Bunny's manager, highlighted the close working relationship between Bad Bunny and Apple in comments to *Music Business Worldwide* shortly after the Infringing Album's release, noting that Apple will "always help [Bad Bunny] achieve what he has in mind and it's always a cross collaboration with them.  We're very happy with the partnership and we hope to be [partners for] many years to come."

10.     Rimas is a limited liability company organized under the laws of the Commonwealth of Puerto Rico, the sole members of which, upon information and belief, are Bad Bunny, The Orchard, and Assad.  Upon information and belief, Rimas (i) manages Bad Bunny; (ii) controls the rights, among others, to his recording and live performance services, and, through RSM, his songwriting services; and (iii) recommended, coordinated, and directed the procurement for its and Bad Bunny's joint benefit one or more of the agreements concerning such services referenced in this Complaint.  Additionally, Rimas purports to own the copyrights in and to all of the sound recordings embodied in the Infringing Album,

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

4

COMPLAINT FOR COPYRIGHT INFRINGEMENT;
DEMAND FOR JURY TRIAL

1  including the Infringing Recording, and the Infringing Video.

2      11.    RSM is a limited liability company organized under the laws of the

3  State of Florida, and has its principal place of business at 1111 Lincoln Road,

4  Miami Beach, Florida 33139.  Upon information and belief, RSM controls Bad

5  Bunny's music publishing rights in the Infringing Composition and other musical

6  compositions written or co-written by Bad Bunny, and, as detailed further below,

7  has purposefully sought out and entered into business relationships with entities

8  headquartered and individuals residing in the State of California, including, without

9  limitation, UMC, which administers RSM's interests in the Infringing Composition

10  and other musical compositions.

11      12.    Orchard Enterprises NY, Inc. is a corporation organized under the laws

12  of the State of New York, and has its principal place of business at 23 East 4th

13  Street, No. 3, New York, New York 10003.  Orchard Enterprises NY, Inc. is a

14  leading music distributor that, upon information and belief, has purposefully sought

15  out and entered into distribution agreements with numerous recording artists and

16  companies in the State of California, and maintains an office with several

17  employees in Los Angeles, California.  Orchard Enterprises NY, Inc. distributes the

18  Infringing Recording, Infringing Album, and Infringing Video, including pursuant

19  to licensing agreements entered into with various California-based and other digital

20  platforms.

21      13.    Orchard Enterprises LLC is a limited liability company organized

22  under the laws of the State of California, and has its principal place of business at

23  18960 Ventura Blvd., #445, Tarzana, California 91356.  Upon information and

24  belief, Orchard Enterprises LLC is an agent of Orchard Enterprises NY, Inc.

25      14.    Torres is an individual who, upon information and belief, resides in

26  Los Angeles, California, and co-wrote the Infringing Composition with Bad Bunny

27  and Borrero, and co-produced the Infringing Recording with Borrero.  Upon

28  information and belief, and as detailed further below, Torres has purposefully

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

5                    COMPLAINT FOR COPYRIGHT INFRINGEMENT;
                     DEMAND FOR JURY TRIAL

1   sought out and entered into business relationships with entities headquartered in the

2   State of California, including, without limitation, SOU, which controls Torres's

3   interests in the Infringing Composition and other musical compositions.

4       15.     Creative Park is an entity whose legal form is currently unknown to

5   Plaintiffs, but, upon information and belief, is wholly owned and controlled by

6   Torres, and is entitled to and has received royalties generated by exploitations of

7   the Infringing Composition.  Upon information and belief, and as detailed further

8   below, Creative Park has purposefully sought out and entered into business

9   relationships with entities headquartered in the State of California, including,

10  without limitation, SOU, which controls Creative Park's interests in the Infringing

11  Composition and other musical compositions.

12      16.     Borrero is an individual who, upon information and belief, resides in

13  Los Angeles, California, and co-wrote the Infringing Composition with Bad Bunny

14  and Torres, and co-produced the Infringing Recording with Torres.  Upon

15  information and belief, and as detailed further below, Borrero has purposefully

16  sought out and entered into business relationships with various entities

17  headquartered in the State of California, including, without limitation, W-T, which

18  controls Borrero's interests in the Infringing Composition and other musical

19  compositions.

20      17.     UMC is a corporation organized under the laws of the State of

21  Delaware, and has its principal place of business at 2100 Colorado Avenue, Santa

22  Monica, California 90404.

23      18.     SOU is a corporation organized under the laws of the State of

24  California, and has its principal place of business at 2100 Colorado Avenue, Santa

25  Monica, California 90404.

26      19.     Spotify is a corporation organized under the laws of the State of

27  Delaware, and has its principal place of business at 4 World Trade Center, 150

28  Greenwich Street, New York, New York 10007.  Spotify is registered with the

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

6

COMPLAINT FOR COPYRIGHT INFRINGEMENT;
DEMAND FOR JURY TRIAL

1  Secretary of State of the State of California to conduct business in the jurisdiction,

2  and maintains what it describes as a "major hub" with hundreds of employees at its

3  150,000 square foot campus at 555 Mateo Street, Los Angeles, California 90013.

4      20.    W-T is a corporation organized under the laws of the State of

5  California, and has its principal place of business at 777 South Santa Fe Avenue,

6  Los Angeles, California 90021.

7      21.    Apple is a corporation organized under the laws of the State of

8  California, and has its principal place of business at One Apple Park Way

9  Cupertino, California 95014.

10     22.    Plaintiffs do not know the names and/or role(s) in the wrongdoing at

11 issue of the defendants identified as Does 1 through 10, and, therefore, sue them

12 using such designations.  Plaintiffs will seek to amend this Complaint to identify

13 these defendants when Plaintiffs learn of their names and role(s) in the wrongdoing

14 at issue.

15     23.    Upon information and belief, at all times relevant to this Complaint,

16 each of the Defendants acted as an agent for the other Defendants, acted within the

17 scope of such agency, and actively participated in the conduct alleged herein and/or

18 ratified such conduct knowing that it violated Plaintiffs' legal rights.

19                     **JURISDICTION AND VENUE**

20     24.    The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§

21 1331 and 1338(a) because the claim alleged herein arises under the Copyright Act

22 of 1976, 17 U.S.C. §§ 101 *et seq.*

23     25.    Venue is proper in this District under 28 U.S.C. §§ 1391(b) and/or

24 1400 because at least one defendant resides or may be found in this District, and

25 because a substantial part of the events or omissions giving rise to the claim

26 occurred in this District.

27     26.    Each defendant is subject to personal jurisdiction in the State of

28 California because, as detailed herein, each defendant is domiciled in the State or

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

7                    COMPLAINT FOR COPYRIGHT INFRINGEMENT;
                                        DEMAND FOR JURY TRIAL

1    the claims herein relate to or arise out of activities that each of them purposefully

2    directed toward or conducted in the State, and because the exercise of personal

3    jurisdiction over each of them is just and reasonable.

4    **FACTUAL BACKGROUND**

5    **The Relationships Between and Among the Defendants and Third Parties**

6          27.    Upon information and belief, The Orchard, entered into one or more

7    agreements with Rimas and/or Bad Bunny, pursuant to which The Orchard obtained

8    the worldwide rights, among other things, to distribute and otherwise commercially

9    exploit, and authorize its affiliates and/or third parties to distribute and

10   commercially exploit, the Infringing Recording, the Infringing Video, the

11   Infringing Album (and other sound recordings and music videos by Bad Bunny), in

12   exchange for collecting, accounting to, and paying Rimas and/or Bad Bunny

13   royalties from all such activities.  At no time did The Orchard, Rimas, or Bad

14   Bunny seek or obtain Plaintiffs' consent to engage in any of those activities in

15   connection with the Infringing Recording, the Infringing Video, or the Infringing

16   Album.  Upon information and belief, The Orchard distributed and otherwise

17   commercially exploited, and authorized its affiliates and third parties around the

18   world to distribute and/or commercially exploit, the Infringing Recording, the

19   Infringing Video, and the Infringing Album, and accounted and paid royalties to

20   Rimas and/or Bad Bunny, and retained distribution fees and other monies and

21   authorized its affiliates and third parties around the world to retain fees and/or other

22   monies, in connection with all such activities.

23         28.    Upon information and belief, UMC entered into one or more

24   agreements with RSM and/or Bad Bunny, pursuant to which UMC obtained the

25   worldwide rights, among other things, to commercially exploit, and authorize its

26   affiliates and/or third parties to commercially exploit, the Infringing Composition

27   (and other musical composition written or co-written by Bad Bunny), in exchange

28   for collecting, accounting to, and paying RSM and/or Bad Bunny royalties from all

Manatt, Phelps &
Phillips, LLP
Attorneys at Law
Los Angeles

8

COMPLAINT FOR COPYRIGHT INFRINGEMENT;
DEMAND FOR JURY TRIAL

1  such activities.  At no time did UMC, RSM, or Bad Bunny seek or obtain Plaintiffs'
2  consent to engage in any of those activities in connection with the Infringing
3  Composition.  Upon information and belief, UMC commercially exploited, and
4  authorized its affiliates and third parties around the world to commercially exploit,
5  the Infringing Composition, and accounted and paid royalties to RSM and/or Bad
6  Bunny, and retained administration fees and other monies and authorized its
7  affiliates and third parties around the world to retain fees and/or other monies, in
8  connection with all such activities.

9       29.    Upon information and belief, prior to the commercial release of the
10  Infringing Works, RSM and/or Bad Bunny entered into an agreement with GMR, a
11  preeminent performing rights organization headquartered in Los Angeles,
12  California, pursuant to which GMR obtained the worldwide right to collect public
13  performance royalties generated by commercial exploitations of the Infringing
14  Composition and other musical compositions written or co-written by Bad Bunny,
15  in exchange for accounting to, and paying RSM and/or Bad Bunny its and/or his
16  share(s) of such royalties.

17       30.    Upon information and belief, SOU entered into one or more
18  agreements with Torres and/or Creative Park, pursuant to which SOU obtained the
19  worldwide rights, among other things, to commercially exploit, and authorize its
20  affiliates and/or third parties to commercially exploit, the Infringing Composition
21  (and other musical composition written or co-written by Torres), in exchange for
22  collecting, accounting to, and paying Torres and/or Creative Park royalties from all
23  such activities.  At no time did SOU, Torres, or Creative Park seek or obtain
24  Plaintiffs' consent to engage in any of those activities in connection with the
25  Infringing Composition.  Upon information and belief, SOU commercially
26  exploited, and authorized its affiliates and third parties around the world to
27  commercially exploit, the Infringing Composition, and accounted and paid royalties
28  to Torres and/or Creative Park, and retained administration fees and other monies

Manatt, Phelps &
Phillips, LLP
Attorneys at Law
Los Angeles

9

COMPLAINT FOR COPYRIGHT INFRINGEMENT;
DEMAND FOR JURY TRIAL

1   and authorized its affiliates and third parties around the world to retain fees and/or

2   other monies, in connection with all such activities.

3          31.    Upon information and belief, W-T entered into one or more

4   agreements with Borrero, pursuant to which it obtained the worldwide rights,

5   among other things, to commercially exploit, and authorize its affiliates and/or third

6   parties to commercially exploit, the Infringing Composition (and other musical

7   compositions written or co-written by Borrero), in exchange for collecting,

8   accounting to, and paying Borrero royalties from all such activities.  At no time did

9   W-T or Borrero seek or obtain Plaintiffs' consent to engage in any of those

10  activities with respect to the Infringing Composition.  Upon information and belief,

11  W-T commercially exploited, and authorized its affiliates and third parties around

12  the world to exploit commercially, the Infringing Composition, and accounted and

13  paid royalties to Borrero, and retained administration fees and/or other monies, and

14  authorized its affiliates and third parties around the world to retain fees and/or other

15  monies, in connection with all such activities.

16         32.    Upon information and belief, The Orchard, directly or through its

17  parent company, Sony Music Entertainment ("SME"), entered into separate license

18  agreements with Spotify, Apple, and other digital service providers.  Upon

19  information and belief, such agreements authorized Spotify, Apple and other digital

20  service providers to distribute worldwide on their respective platforms all sound

21  recordings and music videos controlled by The Orchard, including, without

22  limitation, the Infringing Recording, the Infringing Album, and the Infringing

23  Video, in exchange for substantial fees and undertakings to provide periodic

24  accountings to The Orchard or SME reflecting the number of streams, downloads,

25  or other exploitations, if any, that such sound recordings and music video had on

26  their respective platforms around the world during the time period covered by the

27  periodic accountings.  Upon information and belief, The Orchard relies on such

28  accountings to calculate and pay royalties to Rimas and/or Bad Bunny, and to

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

10          COMPLAINT FOR COPYRIGHT INFRINGEMENT;
DEMAND FOR JURY TRIAL

1   calculate The Orchard's own fees and any other compensation, for all streams,

2   downloads, and any other exploitations of the Infringing Recording, Infringing

3   Album, and/or Infringing Video on Spotify and Apple's platforms and on other

4   digital service providers' platforms around the world.  At no time did The Orchard,

5   SME, Spotify, Apple, or any other digital service providers seek or obtain

6   Plaintiffs' consent to engage in any of the foregoing activities in connection with

7   the Infringing Recording, the Infringing Album, or the Infringing Video.

8         33.    Upon information and belief, UMPG and W-T (directly or through its

9   parent company, Warner Chappell, Inc.) entered into separate license agreements

10  with Spotify, Apple, and other digital service providers.  Upon information and

11  belief, such agreements authorized Spotify, Apple, and other digital service

12  providers to distribute and otherwise commercially exploit worldwide on their

13  respective platforms all musical compositions controlled in whole or in part by

14  UMPG and W-T, including, without limitation, the Infringing Composition and

15  other musical compositions embodied in the Infringing Album and Infringing

16  Video, in exchange for substantial fees and undertakings to provide periodic

17  accountings reflecting, and royalty payments based on, the number of streams,

18  downloads, or other exploitations, if any, each such musical composition had on

19  their respective platforms worldwide during the time period covered by the periodic

20  accountings.  Upon information and belief, UMPG and W-T use such periodic

21  accountings to determine the amount of such royalty payments that they will retain

22  for their own benefit, and the amount they will pay through to Bad Bunny and/or

23  RMS, Torres, and Borrero, as applicable, for all streams, downloads, and any other

24  exploitations of the Infringing Composition and other musical compositions

25  embodied in the Infringing Album and/or the Infringing Video on Spotify and

26  Apple's platforms and on other digital service providers' platforms around the

27  world.  At no time did UMPG, W-T, Spotify, Apple, or any other digital service

28  providers seek or obtain Plaintiffs' consent to engage in any of the foregoing

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

11

COMPLAINT FOR COPYRIGHT INFRINGEMENT;
DEMAND FOR JURY TRIAL

1    activities in connection with the Infringing Composition.

2        34.    Upon information and belief, sometime prior to 2022, Rimas and/or

3    Bad Bunny sought out and entered into an agreement with non-party UTA, a talent

4    agency headquartered in Beverly Hills, California, pursuant to which, among other

5    things, UTA negotiated, among other things, the terms of concert appearances by

6    Bad Bunny during the 2022 Tour.

7        35.    Upon information and belief, Rimas controls the rights to Bad Bunny's

8    recording and live performance services, among other rights, and, together with

9    Bad Bunny, entered into an agreement with non-party Live Nation, a concert

10   promoter and venue owner headquartered in Beverly Hills, California, pursuant to

11   which, among other things, Live Nation undertook to promote the concerts

12   comprising the 2022 Tour, including those in Oakland, Los Angeles, and San

13   Diego, California at one or more of which he performed the Infringing Works.

14   Upon information and belief, Rimas and Bad Bunny and/or their agents, together

15   with Live Nation and UTA, selected the cities in which those concerts took place,

16   and chose to have five concerts in California in three geographically distinct

17   locations in order to maximize the number of fans who would be able to attend and

18   the amount of revenues the concerts would generate there and overall for the 2022

19   Tour.  The California shows were a resounding success, generating approximately

20   $62 million in gross revenues, as detailed further below.

21       36.    Upon information and belief, Bad Bunny played a total of 21 dates on

22   the United States leg of the 2022 Tour.  Upon information and belief, five of those

23   dates were in California, the largest number of dates that Bad Bunny played in any

24   single state during that leg.

25       **The Extraordinary Success of the Infringing Album and the 2022 Tour**

26       37.    The Infringing Album and 2022 Tour were extraordinarily successful.

27       38.    The Infringing Album debuted, and for approximately three months

28   remained, at the top of the *Billboard* charts, going on to become Billboard's best-

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

12                    COMPLAINT FOR COPYRIGHT INFRINGEMENT;
                             DEMAND FOR JURY TRIAL

performing album of 2022.

39.    According to *Billboard*, the Infringing Album "had a blockbuster streaming debut, [bowing] with 261,000 SEA units – totaling 356.66 million on-demand official streams for its songs in its first week.  That's the largest streaming week ever for a Latin album, the biggest streaming week of 2022 for any album of any genre[.]"

40.    At the end of 2022, Spotify reported that the Infringing Album "topped the world's most-streamed album list", significantly contributing to the more than 18.5 billion streams that Bad Bunny generated on the platform in 2022, and his title as Spotify's top artist of the year.

41.    The Infringing Album was the most popular Latin album of all time on Apple Music at the time of its release, earning the record for first-day and first week streams worldwide.  The Infringing Album went on to become the platform's most streamed album of 2022, leading to Bad Bunny's recognition as Apple Music's Artist of the Year.

42.    Upon information and belief, the worldwide distribution and commercial exploitation of the Infringing Album and other Infringing Works have generated tens of millions of dollars in revenues for the Defendants, a portion of which is attributable to the unauthorized use of Plaintiffs' Works, and, as such, constitutes recoverable damages.

43.    The Infringing Album received widespread critical praise, earning spots at or near the top of several "best album of the year" lists, including those published by *Time* (No. 1), *Rolling Stone* (No. 2), *Los Angeles Times* (No. 3), and *Pitchfork* (No. 5).

44.    The Infringing Album garnered multiple awards, including the *Grammy* for Best Música Urbana Album; the *Billboard* Music Award for Best Latin Album; and the American Music Award for Favorite Latin Album.  The Infringing Album also received a *Grammy* nomination for Album of the Year; an

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

13    COMPLAINT FOR COPYRIGHT INFRINGEMENT;
DEMAND FOR JURY TRIAL

1  MTV Video Music Award nomination for Album of the Year; and a Rolling Stone
2  en Español Awards nomination for Album of the Year.

3       45.    Pollstar, a leading music industry publication, named the 2022 Tour
4  "2022's Top Tour", highlighting that "Bad Bunny set the record for a two-show
5  concert gross by a solo headliner, making nearly $31.5 million at SoFi Stadium in
6  Inglewood, California, on Sept. 30 and Oct. 1[, 2022]."  Pollstar also reported that
7  "[w]ith an average of $15.7 million for each show at the venue, Bad Bunny has the
8  second- and third-highest gross ever for a single concert, according to box office
9  sales figures reported during the Pollstar Era that goes back four decades."

10      46.    Upon information and belief, in addition to the $31.5 million in gross
11  revenues from the two SoFi Stadium shows, Bad Bunny generated nearly $31
12  million in gross revenues from his concerts in Oakland and San Diego, California,
13  giving him a total of approximately $62 million from the five California shows he
14  played during the 2022 Tour.

15      47.    According to Pollstar, the 2022 Tour as a whole "grossed
16  $269,334,411 and sold an astounding 1,378,908 tickets across 31 shows from Aug.
17  5-Nov. 16[, 2022]."  A portion of this gross is attributable to the unauthorized use
18  of Plaintiffs' Works, and, as such, constitutes recoverable damages.

19                      **FIRST CLAIM FOR RELIEF**
20          **(Infringement of the Copyright in the Original Composition)**
               **(On Behalf of All Plaintiffs Against All Defendants)**

21      48.    Plaintiffs refer to and reallege each and every allegation in paragraphs
22  1 through 47 above as if fully set forth herein.

23      49.    The Original Composition is an original work of authorship for which
24  the U.S. Copyright Office issued Plaintiffs registration PA 2-425-446.  Dera and
25  Empawa, respectively, are the owner and exclusive licensee of all right, title and
26  interest in and to the Original Composition, including, without limitation, the U.S.
27  and worldwide copyrights therein.

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT FOR COPYRIGHT INFRINGEMENT;
DEMAND FOR JURY TRIAL

50.     Each of the Defendants has infringed the copyright in the Original Composition by engaging in one or more of the following activities, among others, without seeking or obtaining Plaintiffs' consent to do so:  (i) preparing new works derived from the Original Composition by incorporating the Original Composition in the Infringing Works; (ii) reproducing and/or distributing the Original Composition in phonorecords embodying the Infringing Recording; and (iii) performing publicly the Original Composition.

51.     Each of the foregoing activities violates Plaintiffs' exclusive rights in the Original Composition under the U.S. Copyright Act, 17 U.S.C. §§ 101 *et seq.*, entitling them to recover from Defendants the damages they have suffered and will suffer, and all profits, gains, and benefits, both direct and indirect, that Defendants have obtained as a result of their wrongdoing.

## SECOND CLAIM FOR RELIEF
**(Infringement of the Copyright in the Original Recording)**
**(On Behalf of Empawa Against All Defendants)**

52.     Plaintiffs refer to and reallege each and every allegation in paragraphs 1 through 47 above as if fully set forth herein.

53.     The Original Recording is an original work of authorship for which the U.S. Copyright Office issued Empawa registration SR 976-586.  Empawa owns all right, title and interest in and to the Original Recording, including, without limitation, the U.S. and worldwide copyrights therein.

54.     Each of the Defendants has infringed the copyright in the Original Recording by engaging in one or more of the following activities, among others, without seeking or obtaining Empawa's consent to do so:  (i) preparing new works derived from the Original Recording by sampling and otherwise incorporating the Original Recording in the Infringing Recording, Infringing Album, and Infringing Video; (ii) reproducing and/or distributing the Original Recording in phonorecords embodying the Infringing Recording; and (iii) publicly performing the Original

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

15                    COMPLAINT FOR COPYRIGHT INFRINGEMENT;
DEMAND FOR JURY TRIAL

Recording by means of digital audio transmission.

55.    Each of the foregoing activities violates Empawa's exclusive rights in the Original Recording under the U.S. Copyright Act, 17 U.S.C. §§ 101 *et seq.*, entitling Empawa to recover from Defendants the damages it has suffered and will suffer, and all profits, gains, and benefits, both direct and indirect, that Defendants have obtained as a result of their wrongdoing.

**THIRD CLAIM FOR RELIEF**
**(Infringement of the Copyright in the Second Composition)**
**(On Behalf of All Plaintiffs Against All Defendants)**

56.    Plaintiffs refer to and reallege each and every allegation in paragraphs 1 through 47 above as if fully set forth herein.

57.    The Second Composition is an original work of authorship for which the U.S. Copyright Office issued Plaintiffs registration PA 2-425-442.  Plaintiffs co-own all right, title and interest in and to the Second Composition, including, without limitation, the U.S. and worldwide copyrights therein.  Empawa also is the exclusive licensee of all such right, title, and interest owned by Dera.

58.    Each of the Defendants has infringed the copyright in the Original Composition by engaging in one or more of the following activities, among others, without seeking or obtaining Plaintiffs' consent to do so:  (i) preparing new works derived from the Second Composition by incorporating the Original Composition in the Infringing Works; (ii) reproducing and/or distributing the Second Composition in phonorecords embodying the Infringing Recording; and (iii) performing publicly the Second Composition.

59.    Each of the foregoing activities violates Plaintiffs' exclusive rights in the Second Composition under the U.S. Copyright Act, 17 U.S.C. §§ 101 *et seq.*, entitling them to recover from Defendants the damages they have suffered and will suffer, and all profits, gains, and benefits, both direct and indirect, that Defendants have obtained as a result of their wrongdoing.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

16

COMPLAINT FOR COPYRIGHT INFRINGEMENT;
DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### FOURTH CLAIM FOR RELIEF
**(Infringement of the Copyright in the Second Recording)**
**(On Behalf of Empawa Against All Defendants)**

60.    Plaintiffs refer to and reallege each and every allegation in paragraphs 1 through 47 above as if fully set forth herein.

61.    The Second Recording is an original work of authorship for which the U.S. Copyright Office issued Empawa registration SR 973-867.  Empawa owns all right, title and interest in and to the Second Recording, including, without limitation, the U.S. and worldwide copyrights therein.

62.    Each of the Defendants has infringed the copyright in the Second Recording by engaging in one or more of the following activities, among others, without seeking or obtaining Empawa's consent to do so:  (i) preparing new works derived from the Second Recording by sampling and otherwise incorporating the Second Recording in the Infringing Recording, Infringing Album, and Infringing Video; (ii) reproducing and/or distributing the Second Recording in phonorecords embodying the Infringing Recording; and (iii) publicly performing the Second Recording by means of digital audio transmission.

63.    Each of the foregoing activities violates Empawa's exclusive rights in the Second Recording under the U.S. Copyright Act, 17 U.S.C. §§ 101 *et seq.*, entitling Empawa to recover from Defendants the damages it has suffered and will suffer, and all profits, gains, and benefits, both direct and indirect, that Defendants have obtained as a result of their wrongdoing.

### PRAYER

**WHEREFORE**, Plaintiffs pray for judgment as follows:

1.    On the First Claim for Relief for infringement of the copyright in the Original Composition, that each of the Defendants be required (a) to pay Plaintiffs the damages they have suffered as a result of such infringement, including, without limitation, any diminishment in the value of the Original Composition and the fair

17

1  market licensing fees to which they are entitled for the use of the Original

2  Composition in the Infringing Works; and (b) to credit Plaintiffs for their

3  contributions to the Infringing Works, and account and pay them for all past and

4  future profits, gains, and benefits, both direct and indirect, that Defendants have

5  obtained and will obtain as a result of their wrongdoing, which publicly-available

6  information suggests is no less than $25 million.

7  2.    On the Second Claim for Relief for infringement of the copyright in

8  the Original Recording, that each of the Defendants be required (a) to pay Empawa

9  the damages it has suffered as a result of such infringement, including, without

10  limitation, any diminishment in the value of the Original Recording and the fair

11  market licensing fees to which it is entitled for the use of the Original Recording in

12  the Infringing Works; and (b) to credit Plaintiffs for their contributions to the

13  Infringing Works, and account and pay Empawa for all past and future profits,

14  gains, and benefits, both direct and indirect, that Defendants have obtained and will

15  obtain as a result of their wrongdoing, which publicly-available information

16  suggests is no less than $25 million.

17  3.    On the Third Claim for Relief for infringement of the copyright in the

18  Second Composition, that each of the Defendants be required (a) to pay Plaintiffs

19  the damages they have suffered as a result of such infringement, including, without

20  limitation, any diminishment in the value of the Second Composition and the fair

21  market licensing fees to which they are entitled for the use of the Second

22  Composition in the Infringing Works; and (b) to credit Plaintiffs for their

23  contributions to the Infringing Works, and account and pay them for all past and

24  future profits, gains, and benefits, both direct and indirect, that Defendants have

25  obtained and will obtain as a result of their wrongdoing, which publicly-available

26  information suggests is no less than $25 million.

27  4.    On the Fourth Claim for Relief for infringement of the copyright in the

28  Second Recording, that each of the Defendants be required (a) to pay Empawa the

damages it has suffered as a result of such infringement, including, without limitation, any diminishment in the value of the Second Recording and the fair market licensing fees to which it is entitled for the use of the Second Recording in the Infringing Works; and (b) to credit Plaintiffs for their contributions to the Infringing Works, and account and pay Empawa for all past and future profits, gains, and benefits, both direct and indirect, that Defendants have obtained and will obtain as a result of their wrongdoing, which publicly-available information suggests is no less than $25 million.

5.    For pre-judgment and post-judgment interest on all sums awarded;

6.    For Plaintiffs' cost of suit and attorney's fees; and

7.    For such other and further relief as the Court deems just and proper.

Dated:  May 2, 2025          MANATT, PHELPS & PHILLIPS, LLP


                                    By: */s/ Robert A. Jacobs*
                                        Robert A. Jacobs
                                        Sarah E. Moses
                                        Andrea D. Gonzalez

                                        *Attorney for Plaintiffs*
                                        EMPAWA AFRICA MUSIC SERVICES
                                        LIMITED and EZEANI CHIDERA GODFREY
                                        p/k/a DERA




**[REST OF PAGE INTENTONALLY LEFT BLANK]**

1

## **DEMAND FOR JURY TRIAL**

2

3        Plaintiffs EMPAWA AFRICA MUSIC SERVICES LIMITED and EZEANI

4   CHIDERA GODFREY p/k/a DERA respectfully demand a trial by jury.

5    Dated:  May 2, 2025            MANATT, PHELPS & PHILLIPS, LLP

6

7                                  By: */s/ Robert A. Jacobs*
                                         Robert A. Jacobs
8                                        Sarah E. Moses
                                         Andrea D. Gonzalez
9
                                         *Attorney for Plaintiffs*
10                                       EMPAWA AFRICA MUSIC SERVICES
                                         LIMITED and EZEANI CHIDERA GODFREY
11                                       p/k/a DERA

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20                              COMPLAINT FOR COPYRIGHT INFRINGEMENT;
                                              DEMAND FOR JURY TRIAL