KAREN L. STETSON (admitted *pro hac vice*)
GRAY ROBINSON, P.A.
333 S.E. 2ND AVENUE, SUITE 3200
MIAMI, FL  33131
Telephone:  305-416-6880
Facsimile:  305-416-6887
Karen.Stetson@gray-robinson.com

JEFFREY D. GOLDMAN (Bar No. 155589)
LAW OFFICE OF JEFFREY D. GOLDMAN
425 1st St.
Manhattan Beach, CA  90266
Telephone:  310-904-9751

Attorneys for Certain Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| EMPAWA AFRICA MUSIC SERVICES LIMITED; AND EZEANI CHIDERA GODFREY p/k/a DERA, <br><br> Plaintiffs, <br><br> v. <br><br> BENITO ANTONIO MARTINEZ OCASIO p/k/a/ BAD BUNNY; ORCHARD ENTERPRISES NY, INC.; RIMAS ENTERTAINMENT LLC; RSM PUBLISHING LLC; ROBERTO JOSE ROSADO TORRES, JR. p/k/a LA PACIENCA; CREATIVE PARK PUBLISHING; MARCO DANIEL BORRERO p/k/a MAG; UNIVERSAL MUSIC CORP.; SONGS OF UNIVERSAL, INC.; SPOTIFY USA | CASE NO. 2:25-cv-03944 ODW (JPRx) <br><br> JUDGE:  HON. OTIS D. WRIGHT, II <br><br> **NOTICE OF MOTION AND MOTION OF CERTAIN DEFENDANTS FOR ATTORNEYS' FEES AND FULL COSTS PURSUANT TO 17 U.S.C. § 505** <br><br> Date:  April 20, 2026 <br> Time:  1:30 p.m. <br> Ctrm:  Hon. Otis D. Wright, II <br><br> Complaint Filed:  May 2, 2025 <br><br> Judgment Entered:   March 9, 2026 |

#66564278 v1

INC.; WARNER-TAMERLANE PUBLISHING CORP.; APPLE INC. d/b/a APPLE MUSIC; and DOES 1 through 10, inclusive,

Defendants.

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE** that, on Monday, April 20, 2026, at 1:30 p.m. or as soon thereafter as the matter may be heard, in Courtroom 5D of the above-entitled Court, located at 350 W. 1st Street, Los Angeles, California 90012, the Honorable Otis D. Wright, II presiding, defendants Benito Antonio Martinez Ocasio p/k/a Bad Bunny, Orchard Enterprises LLC, Rimas Entertainment LLC, Spotify USA Inc., and Apple Inc. ("Moving Defendants") will and hereby do move for an award of attorney fees and costs against plaintiff Empawa Africa Music Services Limited ("Empawa") in an amount greater than $465,612.00, the full amount of which to be calculated and provided prior to the hearing or as directed by the Court, pursuant to 17 U.S.C. § 505.

This Motion is made on the grounds that Moving Defendants, as prevailing parties, are entitled to a discretionary award of fees pursuant to Section 505.

This Motion is based upon this Notice, the accompanying Declaration of Karen Stetson and exhibits thereto, the court file, any matters of which this Court may properly take judicial notice or may otherwise consider; any reply Moving Defendants may make; and any further evidence and argument that may be presented to the Court prior to or at the hearing on this Motion or as otherwise permitted.

Moving Defendants have complied with L.R. 7-3.  Empawa did not respond to Moving Defendants' email seeking a conference.

DATED:  March 23, 2026        KAREN L. STETSON
                              GRAY ROBINSON, P.A.

                              JEFFREY D. GOLDMAN
                              LAW OFFICE OF JEFFREY D. GOLDMAN

                              By:/s/ Karen L. Stetson
                                 KAREN L. STETSON
                              Attorneys for Moving Defendants

---

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT**………………………………..…    **1**

**FACTUAL AND PROCEDURAL BACKGROUND**……………………….    **1**

**ARGUMENT**……………………………………………..………    **5**

**I.  MOVING DEFENDANTS ARE ENTITLED TO AN AWARD OF FEES**.………………………………………………………..…    **5**

**II.  THE COURT SHOULD AWARD MOVING DEFENDANTS THEIR FEES IN THE AMOUNT REQUESTED** …………………....    **10**

**CONCLUSION**…………………………………………………..    **12**

#65566648 v1
#66564278 v1

# TABLE OF AUTHORITIES

*Baker v. Urban Outfitters, Inc.*,
431 F. Supp. 2d 351 (S.D.N.Y. 2006) )……………..……………………… 8, 9

*Branch v. Ogilvy & Mather, Inc.*,
772 F. Supp. 1359 (S.D.N.Y. 1991)…………………………………… 10

*Bridgeport Music v. Diamond Time*,
371 F.3d 883 (6th Cir. 2004) )……………..……………………… 7

*Bridgeport Music, Inc. v. Rhyme Syndicate Music*,
376 F.3d 615 (6th Cir. 2004)……………..……………………… 7, 8

*Elektra Ent. Group Inc. v. Bryant*,
2004 WL 783123 (C. D. Cal. 2004)……………………………… 5

*Express LLC v. Forever 21*,
2010 WL 11512410 (C.D. Cal. Nov. 15, 2010) ………………………… 9

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517 (1994) …………………………………..………… 5, 6

*Gable v. National Broadcasting Company*,
2010 WL 11506430 (C.D. Cal. Aug. 6, 2010) ………………………… 6, 9

*Getaped.Com, Inc. v. Cangemi*,
188 F. Supp. 2d 398 (S.D.N.Y. 2002)……………………………… 5

*Hermosilla v. Coca-Cola Co.*,
492 Fed. Appx. 73 (11th Cir. 2012) ……………………………… 13

*Historical Research v. Cabral*,
80 F.3d 377, 378-79 (9th Cir. 1996)……………………………… 5

*Kirtsaeng v. John Wiley & Sons, Inc.*,
579 U.S. 197 (2016) …………………………………………… 6, 9

*Lahiri v. Universal Music & Video Distribution*,
513 F. Supp. 2d 1172 (C.D. Cal. 2007) …………………….………… 6

MOTION FOR ATTORNEYS' FEES AND FULL COSTS

v

#65566648 v1
#66564278 v1

*Lil' Joe Wein Music, Inc. v. Jackson*,
2008 WL 2688117 (S.D. Fla. July 1, 2008) ………………………………… 8

*Maljack Prods., Inc. v. Goodtimes Home Video Corp.*,
81 F.3d 881 (9th Cir. 1996) ……………………………………………. 6

*Mattel, Inc. v. Walking Mountain Productions*,
353 F.3d 792 (9th Cir. 2003) …………………………………………. 8

*Matthews v. Freedman*,
157 F.3d 25 (1st Cir. 1998) …………………………………………. 6

*Nidec Corp. v. Victor Co. of Japan*,
249 F.R.D. 575 (N.D. Cal. 2007)…………………………………………. 7

*Oddo v. Ries,*
743 F.2d 630 (9th Cir. 1984) …………………………………………. 2, 7

*Oracle USA, Inc. v. Rimini Street, Inc.*,
209 F. Supp. 3d 1200 (D. Nev. 2016) …………………………………… 10

*Overrated Productions, Inc. v. Universal Music Group Recordings, Inc.*,
2020 WL 10052853, *7-8 (C.D. Cal. March 24, 2020)…………………….. 12

*Riviera Distributors, Inc. v. Jones*,
517 F.3d 926 (7th Cir. 2008) …………………………………………. 5, 6

*VMG Salsoul, LLC v. Ciccone*,
2014 WL 12585798 (C.D. Cal. 2014) …………………………………… 13

17 U.S.C. § 505………………………………………………………..…….. 1, 5, 12

Fed. R. Civ. P. 54………………………………………………………….…….. 1

MOTION FOR ATTORNEYS' FEES AND FULL COSTS

vi

Case No. 2:25-cv-03944 ODW (JPRx)

#65566648 v1
#66564278 v1

## MEMORANDUM OF POINTS & AUTHORITIES

### PRELIMINARY STATEMENT

This Court entered judgment against plaintiff Empawa Africa Music Services Limited ("Empawa") in this copyright infringement action on March 9, 2026. Dkt. 113. As prevailing parties, defendants Benito Antonio Martinez Ocasio p/k/a Bad Bunny, Orchard Enterprises LLC, Rimas Entertainment LLC, Spotify USA Inc., and Apple Inc. ("Moving Defendants") hereby timely move (Fed. R. Civ. P. 54) for their attorneys' fees and costs, pursuant to 17 U.S.C. § 505, in the amount of $465,612.00.[1]

### FACTUAL AND PROCEDURAL BACKGROUND

In 2024, Empawa contacted certain Moving Defendants, claiming that, beginning in 2022, Moving Defendants had made ***unauthorized*** uses of musical works collectively entitled *Empty My Pocket* ("*Empty*") allegedly owned or controlled by Empawa and/or a co-plaintiff,[2] in a musical recording called *Enséñame a Bailar* ("*Enséñame*") performed by the internationally known Bad Bunny. Moving Defendants responded that they ***did***, in fact, have the necessary authorization to use *Empty* in *Enséñame*, as later explained in their portion of the parties' Joint Rule 26 Report:

> Prior to the exploitation of the composition and sound recording *Enséñame a Bailar*, defendant Rimas obtained written and oral permission from non-party Adesina Lekan p/k/a "Lakizo"— a co-author and co-owner of the works Plaintiffs call *Empty My Pocket*— which granted Rimas (and, by extension, its sublicensees, including the other

---

[1] Not all of the fees incurred by Moving Defendants have been billed as of the date of this Motion; therefore Moving Defendants may supplement this Motion prior to the Court's hearing.

[2] It is Moving Defendants' belief that this co-plaintiff, Ezeani Chidera Godfrey p/k/a Dera, was not primarily responsible for the prosecution of the lawsuit, nor did he finance the lawsuit. Purely in the exercise of Moving Defendants' discretion, they are not seeking a fee award against Mr. Godfrey.

1

Defendants) an ***express, written assignment and/or license authorizing the use at issue***. ***These permissions included all of Plaintiffs' so-called "Works,"*** including the so-called "Second Composition" and "Second Recording."

Dkt. 83, at 3 (emphasis added).  Empawa did not dispute the existence or content of this written authorization, which was provided to it informally before it filed suit as well as in discovery.  Declaration of Karen Stetson ("Stetson Decl.") ¶ 2.

During more than a year of negotiations and discussions, Moving Defendants repeatedly asked Empawa for proof of its claimed copyright ownership as well as proof that Lakizo was not at least a ***co-owner*** of *Empty* – as it is a fundamental principle of copyright law that, as a co-owner, Lakizo had the absolute right, as a matter of law, to authorize Moving Defendants to use *Empty*.  *E.g.*, *Oddo v. Ries*, 743 F.2d 630, 633 (9th Cir. 1984) ("each co-owner [of a copyright] has an independent right to use or license the use of the copyright").  Stetson Decl. ¶ 3.

Throughout these pre-litigation discussions, Empawa dissembled, made excuses, and never provided satisfactory proof of either of these necessary prerequisites to its copyright claims.  Instead, in May 2025, nearly three years after *Enséñame* was first publicly exploited (Amended Complaint ¶ 4 *et seq*.), Empawa sued Moving Defendants on four counts of copyright infringement, seeking over $100 million in damages (*id*., pp. 18-19) and disingenuously accusing ***Moving Defendants*** of the very "stonewall[ing]" (*id*. ¶ 6) in which ***Empawa*** had engaged. Stetson Decl. ¶ 3.

The reality was and remains that Empawa could never dispute that Lakizo ***had the legal right*** to authorize Moving Defendants to use *Empty*.  Empawa itself had publicly credited Lakizo as a co-author and producer of *Empty*.  Dkt. 83, at 3.  For example, in a press release Empawa distributed widely to the media before it filed suit – plainly intended to publicly disparage Bad Bunny – Empawa ***admitted*** that

---

MOTION FOR ATTORNEYS' FEES AND FULL COSTS

2

Case No. 2:25-cv-03944 ODW (JPRx)

Lakizo co-owned the *Empty* master recording, arguing only the legally irrelevant fact that he was not its ***sole*** owner:

> Rimas Music states that it purchased the master recording from Lakizo Entertainment which, it also states, is identified in numerous public sources as the track's creator and owner." This claim falsely implies that Lakizo Entertainment is the sole creator and owner of "Empty My Pocket." Joeboy is the sole performer of "Empty My Pocket," a song which he wrote on a beat composed by Dëra. Lakizo Entertainment's role in the release of "Empty My Pocket" was as a licensed distributor. In assuming this role, Adesina Lekan (dba Lakizo Entertainment) negotiated the rights to ***a partial share in the writing and production credit, as well as a partial share in the master***.

Dkt. 95 (opp. to *ex parte* application), at 3 n.2 & Ex. 1 (emphasis added). Moving Defendants had relied on Lakizo's publicly recognized status as a co-author to obtain permission from him to use *Empty*, in good faith and for consideration. Moving Defendants acted properly and lawfully at all times, (see Joint Report, Dkt 83, p. 4-6), and this case was meritless from the beginning and should never have been brought. Instead, Empawa filed and aggressively litigated it, apparently hoping that Bad Bunny's wealth, prominence, and desire to avoid attorneys' fees and bad publicity would enable Empawa to extract an undeserved, multi-million-dollar settlement.

Despite Empawa's pre-litigation admissions, it made various inconsistent contentions in the lawsuit in a futile effort to avoid the dispositive import of the copyright co-ownership rule. Initially, it argued that Lakizo had assigned his ownership interest in *Empty* to a third-party entity with "Empawa" in its name, retaining only a "limited right to distribute the Sound Recording" of *Empty* (Amended Complaint ¶ 6). But as Moving Defendants pointed out to both Empawa and the Court, this supposed agreement was "incomprehensible, self-contradictory, and legally ineffective as a purported assignment" from Lakizo to the other Empawa

MOTION FOR ATTORNEYS' FEES AND FULL COSTS

3

#65566648 v1
#66564278 v1

entity.  Dkt. 83, at 3.  At some later point, Empawa scrambled to change the entire theory of its case, asserting that Lakizo had nothing to do with the works in the first place (leaving unexplained their previous admissions, and why they had him execute a purported assignment of nothing).  *Id*. at 4.

Moreover, because the alleged assignment from Lakizo was to a different Empawa entity – ***not*** the plaintiff – it proved too little, in any event.  Empawa – the litigant claiming standing to bring the infringement claim as a purported owner of *Empty* – never provided Moving Defendants with any chain of title documents showing that it had acquired the alleged ownership of *Empty* from the nonparty Empawa entity.  Dkt. 95, at 2 ("despite over a year of negotiation and discussion before this lawsuit was filed, Empawa never provided to Defendants (and still hasn't) clear evidence of such ownership.").

Moving Defendants' initial round of written discovery included requests for the documents that would prove (or disprove) Empawa's ownership (or at least co-ownership) of Empty, as well as a set of Requests for Admission (RFAs) designed to challenge this assertion and tease out the true meaning of the supposed agreement with Lakizo that Empawa had claimed left Lakizo with only a "limited right to distribute the Sound Recording" of *Empty* (Amended Complaint ¶ 6).  But when faced with the prospect of responding to this discovery, Empawa's actions were telling:   first, frivolous objections; second, attempts by Empawa's counsel to stall and delay; third, when that did not lull Moving Defendants into foregoing their discovery, an *ex parte* application by its counsel to withdraw from the case and Empawa's abandonment of the action rather than hire new counsel and respond to the discovery.  Dkt. 94; Dkt. 95 at 3-6.  As Moving Defendants noted, "Empawa must have known that providing such discovery would defeat its claims.  Why else would Empawa choose to abandon its case … rather than provide such basic discovery[?]" Dkt. 95 at 7.

#65566648 v1
#66564278 v1

## **ARGUMENT**

The Copyright Act provides that the Court, in its discretion, may award "full costs," including attorneys' fees, to the prevailing party.  17 U.S.C. § 505; *see also, e.g.*, *Elektra Ent. Group Inc. v. Bryant*, 2004 WL 783123, *7 (C. D. Cal. 2004); *Getaped.Com, Inc. v. Cangemi*, 188 F. Supp. 2d 398, 406 (S.D.N.Y. 2002).  Because the Court dismissed the action with prejudice, changing the legal relationship between the parties, Moving Defendants are prevailing parties.  *See Riviera Distributors, Inc. v. Jones*, 517 F.3d 926, 928 (7th Cir. 2008) (in copyright case, "[defendant] Midwest obtained a favorable judgment.  That this came about when [plaintiff] Riviera threw in the towel does not make Midwest less the victor than it would have been had the judge granted summary judgment or a jury returned a verdict in its favor.  Riviera sued; Midwest won; no more is required.").

## I. MOVING DEFENDANTS ARE ENTITLED TO AN AWARD OF FEES.

While "[t]here is no precise rule or formula" for determining whether the court, in its discretion, should award attorney's fees to a prevailing party in a copyright case, courts in this Circuit consider the following nonexclusive factors: (1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) objective unreasonableness (both in the factual and in the legal components of the case); and (5) the need in particular circumstances to advance considerations of compensation and deterrence. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994); *Historical Research v. Cabral*, 80 F.3d 377, 378-79 (9th Cir. 1996) (considering *Fogerty* factors).

Applying the applicable factors, Moving Defendants' entitlement to a fee award is clear.  Moving Defendants obtained total and complete success on Empawa's copyright claims; those claims were not objectively reasonable (though the Court may award Moving Defendants their fees even if they were); Empawa's motivation was suspect; and a fee award will support considerations of compensation

MOTION FOR ATTORNEYS' FEES AND FULL COSTS

5

Case No. 2:25-cv-03944 ODW (JPRx)

#65566648 v1
#66564278 v1

and deterrence, and vindicate the purposes of the Copyright Act.

**Factor 1:  Degree of Success Obtained.**  Empawa's action was dismissed with prejudice and judgment has been entered for Moving Defendants.  Thus, Moving Defendants "obtained total success in defending against [Empawa's] copyright claims." *Maljack Prods., Inc. v. Goodtimes Home Video Corp.*, 81 F.3d 881, 890 (9th Cir. 1996); *see Riviera Distributors*, 517 F.3d at 928 ("Riviera sued; Midwest won; no more is required.").

**Factors 2 & 4:  Objective Unreasonableness/Frivolousness.**  The Court need not find that Empawa's claims were frivolous or even objectively unreasonable in order to award fees.  While the Court "should give substantial weight to the objective reasonableness of the losing party's position … the court must also give due consideration to all other circumstances relevant to granting fees; and it retains discretion, in light of those factors, to make an award even when the losing party advanced a reasonable claim or defense." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 199-200 (2016).  Thus, "[d]epending on other circumstances, a district court could conclude that the losing party should pay even if all of the arguments it made were reasonable." *Matthews v. Freedman*, 157 F.3d 25, 29 (1st Cir. 1998); *see also Fogerty*, 510 U.S. at 532 & n.18 (rejecting argument that attorneys' fees award to a defendant "represents a penalty imposed upon the plaintiff for institution of a baseless, frivolous, or unreasonable suit, or one instituted in bad faith").

In any event, "[r]egardless of whether [Empawa] honestly believed in the validity of [its] claim, there can be no question that this copyright action was objectively unreasonable, both legally and factually." *Gable v. National Broadcasting Company*, 2010 WL 11506430, *4 (C.D. Cal. Aug. 6, 2010).  Empawa never proffered any evidence of its own (as opposed to its affiliate's) copyright ownership – an essential element of a copyright claim. *Lahiri v. Universal Music & Video Distribution*, 513 F. Supp. 2d 1172, 1175-76 (C.D. Cal. 2007).  Nor did

Empawa ever seek to contravene the foundational and dispositive copyright principle that *any* co-owner, including Lakizo, could (and did) grant permission to Moving Defendants to use *Empty*.  *Oddo*, 743 F.2d at 633 ("each co-owner [of a copyright] has an independent right to use or license the use of the copyright").  And when faced with an imminent court order that would require it to explain how it owned *Empty* and Lakizo did not, Empawa chose instead to abandon its claims altogether.  That it did not find a replacement counsel to prosecute its claims after its original counsel withdrew speaks volumes.

**Factor 3: Motivation.**  The Court need not find that Empawa filed or maintained this suit in bad faith to support a fee award.  *Fogerty*, 510 U.S. at 532 & n.18.  Nevertheless, the circumstances fully support such a conclusion.  *See Bridgeport Music v. Diamond Time*, 371 F.3d 883, 896 (6th Cir. 2004) (improper motive may be inferred from conduct).  Before filing, Empawa sought to litigate this case in the press, using the media's desire for any news about Bad Bunny to impugn Moving Defendants' integrity and try to force an unjustified settlement to stem the bad publicity about Bad Bunny's supposed infringement and disregard for struggling African musicians.  E.g., https://www.rollingstone.com/music/music-news/bad-bunny-copyright-infringement-joeboy-mr-eazi-1234676434/ ("the intent of Rimas Music is clearly to blatantly appropriate young African creators' work for their gain without attribution….Unfortunately this is part of a broader pattern we see in how the wider music industry approaches the IP [intellectual property] of African artists").

Even in the midst of ginning up this negative publicity, however, Empawa (perhaps inadvertently) admitted the critical fact – Lakizo's co-ownership  of *Empty* – that rendered its case completely meritless from the very start. Empawa's litigation tactics – objecting, delaying, and finally abandoning the case rather than prove its claims with evidence, not rhetoric – showed that its level of confidence in its claims did not match its public statements seeking to shame Moving Defendants into a

---

MOTION FOR ATTORNEYS' FEES AND FULL COSTS

7

Case No. 2:25-cv-03944 ODW (JPRx)

#65566648 v1
#66564278 v1

settlement.  *See* Dkt. 95, at 3-6; *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 628 (6th Cir. 2004) ("a party's litigation tactics may weigh in favor of an award of fees when the conduct supports an inference concerning motivation or a particular need for deterrence.").  As in *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 358 (S.D.N.Y. 2006), "the record suggests that [Empawa] filed and maintained this suit …in an attempt to garner publicity … [F]ederal courts do not exist so that [plaintiffs] can roll the dice on unreasonable allegations or so they can seek fame and fortune from 'deep pocketed' defendants."  *Id*. at  360.

In addition, the alleged "infringement" commenced in 2022, Amended Complaint ¶ 4 *et seq*., yet Empawa waited until 2025 to sue.  This further supports an inference of bad faith.  *Lil' Joe Wein Music, Inc. v. Jackson*, 2008 WL 2688117, *6 (S.D. Fla. July 1, 2008) ("Plaintiff's motivation in filing this case was at least questionable, if not improper or in bad faith, as Plaintiff waited for almost three years after the songs at issue were released before filing this case, while during that period Defendants spent large sums to exploit the songs.").

**Factor 5:  Compensation/Deterrence.**  "Under the Copyright Act, the question is whether a successful *defense* of the action furthered the purposes of the Act, not whether a *fee award* would do so."  *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 816 (9th Cir. 2003) (emphasis in original).  In *Fogerty*, the Supreme Court explained how a successful defense furthers the policies and objectives of the Copyright Act:

> Because copyright law ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible.  To that end, defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate meritorious claims of infringement. … Thus a successful defense of a copyright infringement action may further the

---

#65566648 v1
#66564278 v1

policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright.

510 U.S. at 527.

The Supreme Court elaborated in *Kirtsaeng*:

> When a litigant—whether plaintiff or defendant—is clearly correct, the likelihood that he will recover fees from the opposing (i.e., unreasonable) party gives him an incentive to litigate the case all the way to the end…. [A] person defending against a patently meritless copyright claim has every incentive to keep fighting, no matter that attorney's fees in a protracted suit might be as or more costly than a settlement…. Conversely, when a person (again, whether plaintiff or defendant) has an unreasonable litigating position, the likelihood that he will have to pay two sets of fees discourages legal action…. All of those results promote the Copyright Act's purposes, by enhancing the probability that both creators and users (i.e., potential plaintiffs and defendants) will enjoy the substantive rights the statute provides.

579 U.S. at 205.

Here, Empawa's meritless claims – especially coupled with its relentless attempts to publicize them – sought to confuse the public about Moving Defendants' integrity and the true ownership of *Enséñame*. *Express LLC v. Forever 21*, 2010 WL 11512410, *3 (C.D. Cal. Nov. 15, 2010) (meritless claims "are inimical to the purposes of the Copyright Act [because they] confuse the public as to which works are or are not protected, which can chill creative expression."). Moving Defendants' victory "secured the public's access to an original literary work and encouraged the creation of additional original works." *Gable*, 2010 WL 11506430 at *5.

Without an award of the requested attorney's fees, Empawa will suffer no consequence – and Moving Defendants will have been penalized substantially – as a

---

MOTION FOR ATTORNEYS' FEES AND FULL COSTS

9

Case No. 2:25-cv-03944 ODW (JPRx)

#65566648 v1
#66564278 v1

result of Empawa's decision to file and pursue this meritless lawsuit in disregard of the facts. *See Baker*, 431 F. Supp. 2d at 357 (attorney's fees should be awarded to deter plaintiffs "from bringing unreasonable claims based on a cost/benefit analysis that tells such plaintiffs that they can score big if they win and that there will be no adverse consequences if they lose.").

## II.    THE COURT SHOULD AWARD MOVING DEFENDANTS THEIR FEES IN THE AMOUNT REQUESTED.

"An award for attorney's fees should reflect the time that was reasonably necessary to successfully [litigate] the copyright claims, including any time spent responding to motions or other actions by the adverse party." *Branch v. Ogilvy & Mather, Inc.*, 772 F. Supp. 1359, 1366 (S.D.N.Y. 1991). "In determining the reasonableness of an award of attorneys' fees, a district court considers several non-exclusive factors, including: (1) the reputation and skill of counsel; (2) the financial terms of the client fee arrangement; (3) the nature and extent of work performed and results obtained; and (4) awards in similar cases." *Oracle USA, Inc. v. Rimini Street, Inc.*, 209 F. Supp. 3d 1200, 1216 (D. Nev. 2016).

The attached Stetson Declaration supports Moving Defendants' application for fees, reflecting counsel's extensive experience in copyright cases, especially music copyright cases, the hourly rates at which counsel performed their services for Moving Defendants, and the specific work performed as evidenced by counsel's contemporaneous billing records. *Id.* ¶¶ 4-7. Because Moving Defendants' lawyers were not "working outside [their] normal area of practice," "the appropriate rates for counsel in this copyright infringement action are the actual rates charged by counsel." *Oracle USA*, 209 F. Supp. 3d at 1216-17 ("in an action under the Copyright Act, an award based on the actual rates charged by counsel has consistently been held to be reasonable under 17 U.S.C. § 505."). "This is because in such complex litigation 'the

#65566648 v1
#66564278 v1

parties can reasonably be expected to retain nationally respected law firms and nationally respected attorneys to pursue their interest in the litigation,'" *id*. at 1217.

Moving Defendants seek $462,894.00 in attorneys' fees incurred in performing the following tasks, among others:

- Analyzing the Complaint and Amended Complaint;

- Preparing and filing Answers and then Amended Answers (after Empawa's counsel made highly unusual, hypertechnical demands to move to strike the original answers because the affirmative defenses were allegedly too conclusory, conduct that substantially increased the cost of preparing the Answers for no apparent litigation purpose);

- Preparing for and attending the telephonic Rule 26 Conference;

- Preparing the joint Rule 26 Report and conferring with opposing counsel about the report;

- Negotiating a protective order with counsel;

- Analyzing and responding to substantial written discovery from Empawa;

- Propounding discovery and reviewing and analyzing Empawa's (few) responses and (many) objections;

- Reviewing internal documents and evidence to respond to Complaint and discovery;

- Meeting and conferring with Empawa concerning those responses, including drafting and sending a meet and confer letter, attempting to secure a date for the discovery conference, attending the discovery conference, and preparing and filing a discovery motion that apparently resulted in Empawa's abandonment of the case;

- Reviewing documents produced by Empawa and searching for and locating publicly available documents related to its claims;

MOTION FOR ATTORNEYS' FEES AND FULL COSTS

11

Case No. 2:25-cv-03944 ODW (JPRx)

- Consulting with musicologists concerning Plaintiffs' song;
- Retaining Nigerian counsel to provide legal research and analysis regarding Nigerian copyright law;
- Retaining British counsel to promote legal research and analysis regarding British copyright law;
- Negotiating a potential settlement with Empawa in December 2025, when Empawa had apparently already decided to abandon the case but had not so informed Moving Defendants; Monitoring and analyzing social media posts regarding this case;
- Partially opposing the *ex parte* application of Empawa's counsel to withdraw; and
- Drafting this motion.

The following is a summary of the hours spent and hourly rates by each timekeeper in this case, as reflected in more detail in the attachments to the Declaration of Karen L. Stetson, filed simultaneously herewith:

| | | |
|---|---|---|
| Karen L. Stetson | 521.8 hours @ $615/hour | |
| Jeffrey D. Goldman | 128.0 hours @ $680/hour[3] | |
| Jonathan L. Gaines | 90.9 hours @ $555/hour | |
| Elizabeth Foltz | 4.7 hours @ $225/hour | |
| Isabella Diaco | 12.0 hours @ $225/hour | |
| Regina Romeo | 4.0 hours @ $185/hour | |

---

[3] Mr. Goldman agreed to his $680 rate as a courtesy discount because that was the rate of his predecessor local counsel before she had to withdraw due to a conflict. His market rate is substantially higher. Moreover, the rate sought for Mr. Goldman herein is only slightly higher than his rate that was approved by the Court six years ago in *Overrated Productions, Inc. v. Universal Music Group Recordings, Inc.*, 2020 WL 10052853, *7-8 (C.D. Cal. March 24, 2020).

MOTION FOR ATTORNEYS' FEES AND FULL COSTS

12

Case No. 2:25-cv-03944 ODW (JPRx)

#65566648 v1
#66564278 v1

The amount sought by Moving Defendants is substantially less than amounts courts have awarded to prevailing defendants in many other music infringement cases., even without accounting for inflation.  *See*, *e.g.*, *VMG Salsoul, LLC v. Ciccone*, 2014 WL 12585798, *14 (C.D. Cal. 2014) ($670,117); *Hermosilla v. Coca-Cola Co.*, 492 Fed. Appx. 73, 74-75 (11th Cir. 2012) ($535,135).

The Copyright Act also provides that, in copyright actions, "the court in its discretion may allow the recovery of full costs[.]"  17 U.S.C. § 505.  Moving Defendants seek $2,718.00 in costs that were reasonable and necessary to the litigation.  Stetson Decl. ¶ 4.

## CONCLUSION

For all of the foregoing reasons, the Court should amend the judgment to reflect an award of fees and full costs to Moving Defendants and against Empawa in the amount of $465,612.00.

DATED:  March 23, 2026          KAREN L. STETSON
                                GRAY ROBINSON, P.A.

                                JEFFREY D. GOLDMAN
                                LAW OFFICE OF JEFFREY D. GOLDMAN

                                By: /s/ Karen L. Stetson
                                      KAREN L. STETSON
                                Attorneys for Moving Defendants

MOTION FOR ATTORNEYS' FEES AND FULL COSTS

13

Case No. 2:25-cv-03944 ODW (JPRx)

## PROOF OF SERVICE

I, Karen L. Stetson, declare as follows:

I am employed in Miami, Florida. I am over the age of eighteen years and not a party to this action. My business address is GrayRobinson, P.A., 333 SE Second Avenue, Suite 3200, Miami, FL 33131. On the date listed below, I served the within document(s):

**MOTION OF CERTAIN DEFENDANTS FOR ATTORNEYS' FEES AND FULL COSTS PURSUANT TO 17 U.S.C. § 505**

on the interested parties listed below:

MILLER BARONDESS, LLP
A. Sasha Frid, Esq.
Adam M. Agatston, Esq.
James R. Nikraftar, Esq.
2121 Avenue of the Stars, Suite 2600
Los Angeles, California 90067
Tel.: (310) 552-4400
Fax: (310) 552-8400
Emails: sfrid@millerbarondess.com
aagatston@millerbarondess.com
jnikraftar@millerbarondess.com

*Attorneys for Defendants*
RSM Publishing LLC, Universal Music
Corp., and Songs of Universal, Inc.

LOEB & LOEB, LLP
Tal Dickstein, Esq.
Sarah Levitan Perry, Esq.
345 Park Avenue
New York, New York 10054
Tel.: (212) 407-4000
Fax: (646) 607-3142
Emails: tdickstein@loeb.com
sperry@loeb.com

MOTION FOR ATTORNEYS' FEES AND FULL COSTS

14

Case No. 2:25-cv-03944 ODW (JPRx)

#65566648 v1
#66564278 v1

Lauren J. Fried, Esq.
10100 Santa Monica Blvd., Suite 2200
Los Angeles, California 90067
Tel.: (310) 282-2000
Fax: (310) 282-2200
Email: lfried@loeb.com
*Attorneys for Defendant*
Warner-Tamerlane Publishing Corp.


*For Plaintiff Empawa:*
Empawa Africa Music Services Limited
legal@empawaafrica.com

*For Plaintiff Ezeani Chidera Godfrey p/k/a Dera:*
kelvin@brayandkrais.com

**(BY ELECTRONIC MAIL)** By transmitting such document(s) electronically from e-mail address, Karen.Stetson@gray-robinson.com at GrayRobinson, P.A., Miami, Florida, to the person(s) at the electronic mail addresses listed above. The transmission was reported as complete and without error.

I declare under penalty of perjury that the above is true and correct.

Executed on March 23, 2026, at Miami, Florida.

/s/Karen L. Stetson

MOTION FOR ATTORNEYS' FEES AND FULL COSTS

15

Case No. 2:25-cv-03944 ODW (JPRx)

#65566648 v1
#66564278 v1