O

# United States District Court
# Central District of California

EMPAWA AFRICA MUSIC SERVICES LIMITED et al.,

Plaintiffs,

v.

BENITO MARTINEZ OCASIO et al.,

Defendants.

Case № 2:25-cv-03944-ODW (BFMx)

**ORDER DENYING MOTION FOR ATTORNEYS' FEES [115] [116]**

## I. INTRODUCTION

Plaintiffs Empawa Africa Music Services Limited and Ezeani Chidera Godfrey brought this copyright action alleging that Defendant Benito Antonio Martinez Ocasio, professionally known as Bad Bunny, did not have proper authorization to sample Plaintiffs' works for Bad Bunny's song, "Enséñame a Bailar." (First Am. Compl. ("FAC"), Dkt. No. 32.) However, several months into discovery, Plaintiffs abandoned this lawsuit, leading the Court to dismiss the action for lack of prosecution and enter judgment for Defendants. (J., Dkt. No. 113.) Defendants Bad Bunny, Orchard Enterprises LLC, Rimas Entertainment LLC, Spotify USA Inc., and Apple Inc. now move for attorneys' fees and costs against only Empawa under the Copyright Act. (Mot. Att'ys' Fees ("Motion" or "Mot."), Dkt. No. 115.) Defendants RSM

Publishing LLC, Universal Music Corp., and Songs of Universal, Inc. join in the Motion. (Joinder, Dkt. No. 116.) For the following reasons, the Court **DENIES** the Motion.[1]

## II. BACKGROUND

Empawa is a small British music services company. (Decl. Yasmin Baba ISO Opp'n ("Baba Decl.") ¶ 2, Dkt. No. 121-4.) It represents up-and-coming African artists, such as Joseph Akinwale Akinfenwa-Donus, professionally known as Joeboy, and Godfrey. (*Id.* ¶¶ 2, 8.)

In 2019, Godfrey composed and recorded an instrumental work entitled "Empty My Pocket" (the "Original Composition" and the "Original Recording"). (*Id.* ¶ 4.) Between 2019 and 2021, Godfrey and Joeboy wrote and recorded additional lyrics to "Empty My Pocket," creating a new composition and recording titled "Empty My Pocket (ft. Joeboy)" (the "Second Composition" and the "Second Recording"). (*Id.* ¶¶ 5–6.) Empawa owns the exclusive rights to and copyright registrations for the Original Composition and Recording and the Second Composition and Recording (together, "Empty My Pocket"). (*Id.* ¶ 8, Ex. 3 ("Copyrights"), Dkt. No. 121-5.)

Sometime after creating Empty My Pocket, Godfrey and Joeboy entered into an informal arrangement with Adesina Lekan, doing business as Lakizo Entertainment. (Baba Decl. ¶ 9.) Under this arrangement, the details of which are not clear, Lakizo made payments directly to Godfrey and Joeboy in connection with the release of the Second Recording. (*Id.*) However, Empawa did not authorize Godfrey or Joeboy to release the Second Recording without Empawa's prior approval or clearance. (*Id.*)

Following a breakdown of Lakizo, Godfrey, and Joeboy's business relationship, Lakizo reached out to Empawa. (*Id.* ¶ 10.) Empawa informed Lakizo that neither Godfrey nor Joeboy were authorized to enter into a distribution agreement. (*Id.*) Nevertheless, on or about June 21, 2021, Empawa 360 FZ LLC (an Empawa entity)

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

and Lakizo entered into a written agreement for Lakizo to continue exploiting the Second Recording. (the "Empawa-Lakizo Agreement"). (*Id.* ¶ 10–11.) The Empawa-Lakizo Agreement reiterated that Empawa is the copyright owner of the Secondary Recording and Lakizo did not own the copyright to Empty My Pocket. (*Id.* ¶ 10.) The Empawa-Lakizo Agreement also did not grant Lakizo any right to license or sublicense Empty My Pocket. (*Id.*; *see generally id.* Ex. 4 ("Empawa-Lakizo Agreement"), Dkt. No. 121-6.) Empawa also understood that the Empawa-Lakizo Agreement "made it completely clear that Lakizo did not own, and did not have any right to license [Empty My Pocket] to anyone." (Baba Decl. ¶ 13.)

In 2022, Bad Bunny released the album *Un Verano Sin Ti*, which featured the song "Enséñame a Bailar." (*Id.* ¶ 14, FAC ¶ 4.) Enséñame a Bailar contains a sample of Empty My Pocket (the "Sample"). (*See generally* Baba Decl. Ex. 7 ("RFA Resp."), Dkt. No. 121-9.) Defendants claim that they received authorization from Lakizo to use the Sample. (*See, e.g.*, Ocasio Answer, Affirmative Defenses ¶ 3, Dkt. No. 76.)

When Empawa discovered the Sample, it engaged Defendants in settlement discussions. (Baba Decl. ¶ 15.) During these discussions, Empawa produced the Empawa-Lakizo Agreement. (*Id.* ¶ 18.) Empawa's counsel also produced audio files reflecting that Lakizo was not involved in creating Empty My Pocket. (Decl. Robert Jacobs ISO Opp'n ("Jacobs Decl.") ¶ 13, Dkt. No. 121-1.) Defendants did not produce any documentation purporting to demonstrate that Lakizo granted Bad Bunny permission to use the Sample. (Baba Decl. ¶¶ 19–20.)

After settlement discussions collapsed, Empawa and Godfrey, both represented by the law firm Manatt, Phelps & Phillips, filed this action for copyright infringement. (FAC ¶¶ 47–62.) However, as discovery progressed, Godfrey and Joeboy did not fully cooperate in discovery, leading Empawa to decide to informally resolve the case. (Baba Decl. ¶¶ 23–24.) Despite his seeming reluctance to participate in discovery, Godfrey was unwilling to waive his right to sue and wished to proceed with the litigation. (*Id.* ¶ 25.) This divergence in desired case strategy led Manatt to conclude

that it could not continue to represent either party due to an irreconcilable conflict of interest. (*Id.* ¶ 27; Jacobs Decl. ¶ 30.)

Consequently, on December 31, 2025, Manatt asked the Court to withdraw as counsel for Empawa and Godfrey. (Ex Parte Appl. Withdraw, Dkt. No. 94.) The Court granted the application and ordered Empawa to obtain counsel or risk the Court striking its pleadings. (Min. Order, Dkt. No. 101.) After Empawa failed to timely retain new counsel, the Court dismissed Empawa from the case. (Min. Order, Dkt. No. 108.)

Godfrey proceeded pro se. (*Id.*) However, Godfrey never prosecuted the case further. (Min. Order, Dkt. No. 111.) After first affording Godfrey an opportunity to show cause, the Court dismissed the case with prejudice for lack of prosecution and entered judgment for Defendants. (J.)

Defendants now move for attorneys' fees and costs pursuant to the Copyright Act. (Mot.; Joinder.) Empawa, now represented by counsel for the purpose of opposing Defendants' fee motion, opposes. (Opp'n, Dkt. No. 121.)

## III. LEGAL STANDARD

The Copyright Act grants courts discretion to determine a prevailing party's recovery of costs and attorneys' fees in a copyright case. 17 U.S.C. § 505. When making such a determination, courts may consider several nonexclusive factors including "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy Inc.*, 510 U.S. 517, 534 n.19 (1994). Courts must also consider the degree of success obtained by the prevailing party. *Jackson v. Axton*, 25 F.3d 884, 890 (9th Cir. 1994), *overruled on other grounds by Fogerty*, 510 U.S. at 531–32.

While the discretion to award fees and costs does not require an explicit finding of bad faith or blameworthiness on behalf of the losing party, any improper motives or "culpability in bringing or pursuing the action" may also influence this determination.

*Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558 (9th Cir. 1996). Finally, when applying the above factors, courts must do so while remaining "faithful to the purposes of the Copyright Act," which include not only securing "a fair return for an author's creative labor," but also the stimulation of "artistic creativity for the general public good." *Fogerty*, 510 U.S. at 526–27, 534 n.19 (citation modified). If an award of fees would not comport with these policies, then fees should not be awarded. *Fantasy, Inc.*, 94 F.3d at 558.

## IV. DISCUSSION

Although Defendants achieved success by obtaining a dismissal with prejudice, the *Fogerty* factors ultimately weigh against an award of fees here.

### A. Frivolousness and Objective Reasonableness

Claims are "frivolous" if they "lack[] an arguable basis either in law or in fact." *Nietzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Perfect10, Inc. v. Giganews, Inc.*, No. 2:11-cv-07098-AB (SHx), 2015 WL 1746484, at *8 (C.D. Cal. Mar. 24, 2015) ("A case is deemed frivolous only when the result is obvious or the arguments are wholly without merit." (citation modified)). Similarly, a party's conduct is objectively unreasonable if it "should have known from the outset that its chances of success in this case were slim to none." *SOFA Ent., Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013). The mere fact that a party lost cannot establish objective unreasonability. *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1181 (9th Cir. 2013). Courts generally consider the standard for objective reasonableness "somewhat lower than that for complete frivolity," as "frivolity requires evidence that a party's claims were 'clearly baseless' involving 'fantastic or delusional scenarios.'" *Perfect10*, 2015 WL 1746484, at *11.

Empawa asserted four claims for copyright infringement under the theory that Bad Bunny used the Sample without authorization. (FAC ¶¶ 47–62.) To prove copyright infringement, Empawa would have been required to (1) show ownership of the Sample, and (2) demonstrate that Defendants used the Sample in violation of at

least one exclusive right granted to copyright holders under 17 U.S.C. § 106. *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). After examining the evidence, the Court cannot conclude that Empawa's copyright claims were objectively unreasonable and certainly cannot conclude that they were frivolous.

First, ownership. Empawa provides copyright certificates for Empty My Pocket and certain derivatives of Empty My Pocket, all stating that Empawa is the registered owner of the Empty My Pocket copyrights. (Copyrights.) Empawa's copyright certificates constitute prima facie evidence of its ownership of Empty My Pocket, and consequently, the Sample. 17 U.S.C. § 410(c). Empawa was entitled to rely on these copyright certificates to establish ownership when bringing this lawsuit.

To rebut ownership, Defendants seemingly suggest that Godfrey and Joeboy's Nigerian citizenship precludes them from registering a copyright in the United States. (Reply 5–6, Dkt. No. 122.) This argument is meritless. No citizenship requirement exists in the Copyright Act. *See* 17 U.S.C. §§ 101–810.; *see also Who Can Register?*, U.S. Copyright Office, https://www.copyright.gov/help/faq/faq-who.html (last visited Aug. 11, 2026) ("Any work that is protected by U.S. copyright law can be registered. This includes many works of foreign origin . . . regardless of the nationality of the author."). Defendants' description of the copyright certificates as "fraud," without evidence, is not well taken. (Reply 6.)

Second, infringement. Empawa's theory was that Defendants engaged in unauthorized use of Empty My Pocket when it used the Sample in Enséñame a Bailar. (FAC ¶ 4.) Considering Bad Bunny admits that he used the Sample in Enséñame a Bailar, (RFA Resp.), it was objectively reasonable for Empawa to believe that Defendants infringed on Empawa's copyright rights.

Defendants stake much on their affirmative defense that they could not have infringed on Empty My Pocket because Lakizo authorized Bad Bunny to use the Sample in Enséñame a Bailar. Specifically, Defendants argue that Empawa's suit was objectively unreasonable because they must have known that Lakizo could and did

authorize Bad Bunny to use the Sample. (Reply 6–10.) Empawa argues that Lakizo never had authority to grant Bad Bunny permission to use the Sample. (Opp'n 16–20.) The Court finds it was not unreasonable for Empawa to adopt such a position, especially where the Empawa-Lakizo Agreement clearly did not grant Lakizo such a right and where Defendants never presented Lakizo's alleged authorization for Empawa to examine. (Jacobs Decl. ¶¶ 14–15; Baba Decl. ¶ 20.) As Empawa was without the benefit of examining Lakizo's alleged authorization to Bad Bunny, the Court cannot fault Empawa for declining to trust Defendants counsels' word that Lakizo (1) had authority to authorize Bad Bunny to use the Sample, and (2) chose to exercise that authority. The Court certainly cannot find Empawa's position objectively unreasonable when Defendants do not produce a scintilla of evidence demonstrating Lakizo's authority and exercise of said authority. (*See generally* Mot.; Joinder; Reply; RSM Reply.)

For these reasons, the Court finds that Empawa's claims were objectively reasonable and not frivolous, and that these two factors substantially weigh against an award of attorneys' fees for Defendants. *See Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 210 (2016) (requiring courts give "substantial weight" to the objective reasonableness of a losing party's position).

**B. Other Factors**

Of the remaining *Fogerty* factors, including motivation, compensation, and deterrence, none weigh in favor of a fee award. First, Defendants offer little besides conjecture to support their allegation that Empawa brought this action with ill-motive. *See Skidmore v. Led Zeppelin*, No. 2:15-cv-03462-RGK (AGRx), 2016 WL 6674985, at *3 (C.D. Cal. Aug. 8, 2016) (finding that the motivation factor "militates against granting fees" where defendant "failed to provide any evidence that [p]laintiff harbored nefarious motives"), *aff'd*, 952 F.3d 1051 (9th Cir. 2020) (en banc). Instead, Defendants make much out of Empawa's "negative publicity" campaign prior to this litigation. (Mot. 7–8.) While perhaps uncouth, the mere fact that Empawa publicly

discussed the alleged infringement, when balanced against Empawa's declaratory evidence that they sought to settle this dispute from the start, does not rise to the level of improper motive.

Moreover, while the Court acknowledges Defendants accumulated fees and costs in defending this action, the Court finds that the "chilling effect of attorneys' fees may be too great or impose an inequitable burden on an impecunious plaintiff." *Ets-Hotkin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003). Here especially, Defendants do not rebut Empawa's showing that it is a "small, private music services company that represents up and coming African artists." (Baba Decl. ¶ 2.) In comparison, Defendants constitute some of the largest streaming and recording companies in the world. And while the Court is mindful that "[d]eterring non-meritorious lawsuits against defendants seen as having 'deep pockets'" is a "laudable] end[]," here, as the Court finds above, the claims were not objectively meritless, and thus there is nothing to deter. *Scott v. Meyer*, No. 2:09-cv-06076-ODW (RZx), 2010 WL 2569286, at *3 (C.D. Cal. June 21, 2010).

### C. Weighing the *Fogerty* Factors

In sum, none of the *Fogerty* factors weigh in favor a fee award here. Empawa's claims were objectively reasonable when Empawa brought them. Further, Defendants fail to offer compelling evidence that Empawa launched this litigation with ill-motive. Considering the lack of an ulterior motive and the objectively reasonable claims, there is no behavior or conduct the Court needs to deter through compensation.

Most importantly though, after weighing the *Fogerty* factors, the Court finds that a fee award here would be strongly antithetical to the purposes of the Copyright Act. *Fantasy, Inc.*, 94 F.3d at 558 ("Faithfulness to the purposes of the Copyright Act . . . is the pivotal criterion."). While "copyright law ultimately serves the purpose of enriching the general public through access to creative works," the Copyright Act also serves to "discourage infringement" and enable copyright owners to protect their own creative works. *Fogerty*, 510 U.S. at 526–27. Here, where Empawa advances

seemingly meritorious claims, where Defendants admit that they sampled the copyrighted material, and where no conclusive evidence has emerged demonstrating that Defendants had permission to use the Sample, the imposition of attorneys' fees would send the wrong message to parties seeking to protect their intellectual property by testing meritorious claims in open court. *See Kirtsaeng*, 579 U.S. at 204 (holding that fee awards "should encourage the types of lawsuits that promote" the dual purposes of "encouraging and rewarding authors' creations" and "enabling others to build on that work").

## V. CONCLUSION

For the reasons discussed above, the Court **DENIES** Defendants' Motion. (Dkt. Nos. 115, 116.)

**IT IS SO ORDERED**.

August 20, 2026

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**